IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA HUTCHISON, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 2:19-cv-01001-RJC |
| CAVALRY SPV I LLC and  CAVALRY PORTFOLIO SERVICES LLC, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge.

Presently pending before the Court is a Motion for Judgment on the Pleadings (ECF No. 24) filed on behalf of Defendants Cavalry SPV I, LLC and Cavalry Portfolio Services, LLC (collectively, "Cavalry" or "Defendants") pursuant to Fed. R. Civ. P. 12(c).  For the reasons stated herein, the motion will be granted and the complaint will be dismissed with prejudice.

**I.  Procedural and Factual Background**

This action was filed on August 14, 2019 with the filing of the four-count Complaint (ECF No. 1, "Compl."), and Defendant filed the now-pending Motion for Judgment on the Pleadings on January 7, 2020.  (ECF No. 24).[1]  Plaintiff has filed a Response in Opposition thereto (ECF No. 29) to which Defendants have filed a Reply.  (ECF No. 31).  The matter is now ripe for disposition.

We have jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. 1692, and subject matter jurisdiction over state law claims pursuant to 28 U.S.C. § 1332.

---

[1] This case was reassigned to this member of the Court on February 4, 2020.  (ECF No. 28)

This action seeks damages, attorneys' fees, and costs against Defendants for their alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq*. (Count I) the Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. Stat. § 2270 *et seq*. (Count II), Chapter 63 of the Consumer Credit Code ("CCC"), 12 Pa. Stat. § 6301 *et seq*. (Count III) and the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. § 201-1, *et seq*. (Count IV). Defendant seeks dismissal of all claims.

The allegations in the complaint are as follows.  Plaintiff Joshua Hutchison is and was a resident of Allegheny County, Pennsylvania, and sues individually and behalf of others similarly situated.  Compl. ¶¶ 7, 34-42.   Defendant Cavalry SPV I LLC ("CSPV") is a Delaware limited liability corporation with its principal place of business located in Valhalla, New York. Compl. ¶ 8. CSPV's sole business is the purchasing of defaulted consumer debt with the purpose of collecting on that debt for profit. Compl. ¶ 9. Defendant Cavalry Portfolio Services LLC ("CPS") is a Delaware limited liability corporation with its principal place of business located in Valhalla, New York. Compl. ¶ 10. CPS's sole business is collecting debts that are purchased and owned by CSPV, including calling consumers and sending them letters, and filing lawsuits against consumers on behalf of CSPV and under its name. Compl. ¶ 11.

In November 2018, Defendants sued Plaintiff claiming Plaintiff owed Defendants a debt. Compl. ¶ 20. The debt concerned a defaulted credit card account issued by Capital One Bank (the "Account"). Compl. at ¶ 21. Defendants claimed they purchased the Account and sought to collect the remaining balance of the Account from Plaintiff. Compl. at ¶ 25. Plaintiff hired an attorney to defend against Defendants' lawsuit on the belief that Defendants had authority to initiate the lawsuit against Plaintiff. Compl. at ¶¶ 26, 30. The lawsuit was dismissed with prejudice in favor of Plaintiff and against Defendants. Compl. at ¶ 27.  It is further alleged that

2

the Account at issue in the lawsuit qualified as an "open-end credit agreement" under Section 6309 of the CCC. Compl. ¶¶ 21-24, 29. The Account was issued by Capital One Bank. Compl. at ¶ 21. The Account was used to buy goods and services from retailers and other businesses that sold goods and services to consumers. Compl. at ¶ 22. The goods and services purchased through the Account were used for personal purposes. Compl. at ¶ 22. The debt Plaintiff incurred by making purchases on the Account was acquired by Capital One. Compl. at ¶ 23. The Account allowed Plaintiff to repay this indebtedness to Capital One in installments. Compl. at ¶ 23. Finally, the Account imposed a finance charge on periodic Account balances and the finance charge was expressed as a percent of the Account's periodic balances. Compl. at ¶ 24.

Plaintiff further alleges that because the Account was covered by Section 6309 of the CCC, Defendants were required to send notice before filing suit in state court. Compl. ¶¶ 13-19. The CCC obligates those attempting to collect debt through legal process to send a right to cure notice. Compl. at ¶ 17 (citing 12 Pa. C.S. § 6309(b)(2)). Right to cure notices must be sent by certified mail or delivered personally to a consumer. Compl. at ¶ 18 (citing 12 Pa. C.S. § 6309(c)). Right to cure notices must disclose specific consumer rights, including the right to cure default before suit is filed. Compl. at ¶ 18. Plaintiff alleges that Defendants could not legally attempt to collect the Account by filing suit because Defendants failed to send prior notice of Plaintiff's right to cure. Compl. ¶¶ 27-28. Plaintiff claims Defendants' allegedly unlawful conduct forced Plaintiff to retain an attorney and defend an unlawful legal action, misrepresented Defendants' ability to file suit, unfairly subjected Plaintiff to the legal system, and resulted in injury and actual damages, including monetary harm. Compl. at ¶¶ 26, 30-33.

Defendants seek dismissal of all of Plaintiff's claims, arguing that his Account is not subject to Chapter 63 of the CCC, and therefore, Count III should be dismissed as a matter of

law. Defendants then argue that because the CCC is not applicable to the Account, Count I

should be dismissed insofar as the FDCPA violation rests on the basis of Cavalry's alleged

violation of the CCC by filing a lawsuit without first providing notice required by the CCC.

Defendants then argue in the alternative that Plaintiff has failed to allege facts sufficient to

support a FDCPA claim because he has only alleged conclusory statements that he is a

consumer, or that the obligation at issue qualifies as a "debt,"  and that defendants are "debt

collectors" under the statute.   Defendants further argue that because the CCC is not applicable to

the Account, the FCEUA (Count II) and UTPCPL (Count III) claims should be dismissed.

Alternatively, defendants argue Plaintiff has filed to plead an ascertainable loss or justifiable

reliance as are required under the FCEUA and UTPCPL.

## II.  Standard of Review

"The standard for deciding a motion for judgment on the pleadings filed pursuant to

Federal Rule of Civil Procedure 12(c) is not materially different from the standard for deciding

a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Zion v.*

*Nassan,* 283 F.R.D. 247, 254 (W.D. Pa. 2012); *see Harleysville INS. Co. of New York v.*

*Cerciello,* No. 3:08-CV-2060, 2010 WL 11534317, at *2 (M.D. Pa. 2010) ("The standard of

review used for a motion for judgment on the pleadings is substantively identical to that of

a motion to dismiss."); *see also Minnesota Lawyers Mut. Ins. Co. v. Ahrens,* 432 Fed. Appx. 143,

147 (3d Cir. 2011).  Either motion may be used to seek the dismissal of a complaint based on a

plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P.

12(b)(6); *id.* at 12(h)(2)(B). The only difference between the two motions is that a Rule

12(b) motion must be made before a "responsive pleading" is filed, whereas a Rule

12(c) motion can be made "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(b); *id.* at

12(c); *Cerciello,* 2010 WL 11534317, at 2. "A court presented with a motion for judgment on the pleadings must consider the plaintiff's complaint, the defendant's answer, and any written instruments or exhibits attached to the pleadings." *Anthony v. Torrance State Hosp.,* No. CV 3:16-29, 2016 WL 4581350, at *1 (W.D. Pa. 2016) (citing *Perelman v. Perelman,* 919 F.Supp.2d 512, 521 (E.D. Pa. 2013) ).

The Court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [the court] construes them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). The motion will be granted if the plaintiff has not articulated enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). It is not enough for a plaintiff to allege mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Connelly v. Lane Const. Corp.,* 809 F.3d 780, 786-87 (3d Cir. 2016) (quoting *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937).

### III. Discussion

Chapter 63 of the Consumer Credit Code ("CCC"), 12 Pa. Stat. § 6301 *et seq*., relates to goods and services installment sales.  12 Pa. C.S.A. § 6301.   It applies to both a "closed-end credit agreement" and an "open-end agreement."  12 P.A. C.S.A. § 6302.  Defendant argues that Plaintiff has not pled he entered into an "open-end agreement," defined in the CCC as:

> A contract:
>
> (1) in which a buyer ***promises to pay in installments to a seller or financing agency*** the outstanding balance incurred ***in a sale***, whether or not the seller retains a security interest in the goods sold; and
>
> (2) that provides for a finance charge expressed as a percent of the periodic balances to accrue thereafter, if the charge is not capitalized or stated as a dollar amount in the contract.

12 Pa. C.S.A. § 6302 (emphasis added).   Moreover, the term "financing agency" is defined as:

> A person, including a financial institution, engaged in this Commonwealth in whole or in part in the business of purchasing closed-end credit agreements or open-end credit agreements from at least one seller**.**

12 Pa. C.S.A. § 6302.

The CCC defines "sale" and "seller":

> "Sale." The sale of goods or furnishing of services by a seller to a buyer for a time sale price ***payable in installments***.
>
> "Seller." A person engaged in the business of selling goods or furnishing services to a buyer.

12 Pa. C.S.A. § 6302 (emphasis added).

Defendant notes the following. The allegations in the complaint are that Plaintiff had a "credit card account" with Capital One Bank, and that the Account was used to buy goods and obtain services from various retailers, sellers, and businesses, for personal, household, or family use.  Compl. ¶¶ 20-22. There are no allegations that the Account was issued as part of a contract

6

for the sale of goods or services; there are no allegations that these retailers, sellers, and businesses entered into a contract with Plaintiff for the sale of goods or services on a "time sale price payable in installments" or made  an agreement wherein Plaintiff "promise[d] to pay in installments."  The account "was issued by Capital One Bank," and as alleged, was governed by an agreement made apart from any seller or sale. For these reasons, Defendants argue, the CCC does not apply.

In response, Plaintiff argues the Account qualifies as an "open-end credit agreement" under the CCC's express terms and "binding Third Circuit precedent."  Pl.'s Br. In Opp., ECF No. 29, at 9.   According to Plaintiff, the plain language of the provisions of the CCC leads to the conclusion that bank-issued credit cards qualify as "open-end credit agreements" under the CCC because banks, through credit card accounts, "acquire indebtedness" arising from the purchase of goods and services, citing *Acker v. Provident Nat'l Bank*, 512 F.2d 729, 735-39 (3d Cir. 1975), which was decided long before subsequent changes in banking law.[2] In *Acker*, the Third Circuit considered whether a prior version of the CCC, called the Goods and Services Installment Sales Act ("GSISA"), applied to bank-issued credit cards. *Id.* at 731-32, 735-39. The credit cards in *Acker* were issued by banks and were used to buy goods and services from third-party retailers. *Id.* at 731 ("Under the cardholder agreement, an account is established at the bank on behalf of each cardholder who is then permitted … to purchase merchandise from various member merchants who have agreed … to honor the credit card[.]"). The cardholders in *Acker* made direct payments to the banks that issued and operated the credit card programs. *Id.* at 731-32. And the cardholders in *Acker* did not contract with or pay the retailers through which the cardholders used their credit cards to make purchases. *Id.* In *Acker*, the Third Circuit held that

---

[2] Plaintiff does not allege Defendant is a Pennsylvania bank, and the Banking Code has been amended so as to permit open-end revolving loans. 7 P.S. 303(b)

banks qualify as "financing agencies" so long as they acquire indebtedness incurred by consumers through the purchase of goods and services. *Acker* focused on the GSISA definition of "revolving account," which covered credit agreements that provided for "direct payments to … 'financing agenc[ies],'" and Section 1901 of the GSISA, which recognized that banks may qualify as "financing agencies" if they "*acquire indebtedness*." *Acker* 512 F.2d at 736-37 (emphasis added). Since the GSISA definition of "revolving account" covered loans made directly to "financing agencies," and since banks qualified as "financing agencies" by acquiring indebtedness, the Third Circuit found it "unnecessary to address … whether … banks … purchase installment accounts" to determine whether banks qualified as "financing agencies" under the GSISA. *Id.* at 737.

The parties agree the GSISA provisions cited in *Acker* are identical to the corresponding provisions of the CCC. The CCC definition of "open-end credit agreement" mirrors the GSISA definition of "revolving account." *Compare* 12 Pa. C.S. § 6302 (definition of "open-end credit agreement"), *with* GSISA, Section 1201(7) (definition of "revolving account") (quoted in *Acker*, 512 F.2d at 736). Both definitions, "by [their] express terms, … authorize[] an account in which the buyer is obligated to make direct payments to a 'financing agency.'" *Acker*, 512 F.2d at 736. Similarly, Section 6331 of the CCC nearly identical to Section 1901 of the GSISA. *Compare* 12 Pa. C.S. § 6331, *with* GSISA, Section 1901 (quoted in *Acker*, 512 F.2d at 736 n. 14). Both sections are clear that the term "financing agency" covers banks that "*acquire indebtedness*," making it "unnecessary to address … whether … banks … purchase [credit card] accounts" for the purpose of qualifying as a "financing agency." *Acker*, 512 F.2d at 737; *see also id.* at 736 n. 14. Ultimately, *Acker* held that banks qualify as "financing agencies" if they establish credit card

8

accounts through which the banks "acquire indebtedness" arising from the purchase of goods and services. *Id.*

However, one cannot ignore that the banks in *Acker* had agreements with the merchants to acquire the borrowers indebtedness, which is not the case here.  *Id*. at 731.  The GSISA and CCC have been interpreted by Pennsylvania state courts in a limited number of circumstances. Defendants cite to *Iron and Glass Bank v. Franz,* 9 Pa. D &C 3d 419, 422 (Comm. Pl. 1978) (Wettick, J)., which is instructive.  There, the court addressed whether loans, whose proceeds "were used to purchase goods and services from ... [the merchant] (Spa) . . ." fell within the purview of GSISA. The loans were alleged to be "prepared by, at the direction of and in the office of Spa . . . ." and that the lender, "Iron and Glass and Spa had a long course of dealings in which all loan documents dealing with the purchase of memberships in Spa were prepared by employees of Spa in the name of Iron and Glass . . . ." *Id.,* at 420.   Although the Iron and Glass Court held the separate loan and sale were a single transaction, *id.* at 422, when applied to the allegations in the Complaint, Plaintiff's claim falls short.[3]  Under the court's analysis, the transactions herein are not within the purview of Chapter 63 because they are between various retailers and the Plaintiff, for the purchase of goods and services with the proceeds obtained from a separate loan transaction between Capital One and Plaintiff.  *Id.* at 421; *see also Williams v. Nat'l School of Health Tech*., 836 F. Supp. 273, 281-82 (E.D. Pa. 1993) (rejecting application of GSISA to student loans on the grounds student loans not installment sales and insufficient close connection between seller such that loan and sale would be considered one transaction).  Plaintiff here simply alleges that he used a general purpose credit card to purchase goods and services from various retailers, sellers and businesses.  Plaintiff's credit card purchases are not installment

---

[3] We will not apply the GSISA's consumer protections to what are alleged, as we now hold, as non-GSISA loans, and therefore,  we reject Plaintiff's argument that Section 6309 applies independently to the Account.

sales under Chapter 63.  Therefore, Defendant's motion for judgment on the pleadings in granted as to Count III.

Accordingly, because all of the remaining claims, namely, violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq*. (Count I) the Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. Stat. § 2270 *et seq*. (Count II and the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. § 201-1, *et seq*. (Count IV) are premised on violations of Chapter 63,[4] seemingly because they require justifiable reliance on defendants' "wrongful conduct or representation," such claims will be dismissed, and we need not address whether Plaintiff has alleged all of the remaining elements of those claims.

 **Leave to Amend**

Although a district court is not obligated to permit leave to amend before dismissing a complaint in a non-civil rights case, *Wolfington v. Reconstructive Orthopaedic Assocs. II P.C.,* 935 F.3d 187, 210 (3d Cir. 2019), courts generally grant leave to amend unless amendment of the complaint would be inequitable or futile. *See, e.g., Bachtell v. Gen. Mills, Inc.*, 422 F. Supp. 3d 900, 915 (M.D. Pa. Oct. 1, 2019) (citing *Phillips v. Allegheny Cty*., 515 F.3d 224, 245 (3d Cir. 2008)).  After a careful review of the claims set forth in the Complaint, we find that amendment of the claims herein would be futile.


**IV.  Conclusion**

 "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common

---

[4] "Plaintiff's claims are based on Defendants' alleged failure to comply with Section 6309 of the CCC."  Pl.'s Br. In Opp. (ECF No. 29) at 9.

sense." *Iqbal,* 556 U.S. at 679.  For the foregoing reasons, the motion to dismiss is granted and the complaint is dismissed with prejudice.

An appropriate Order of Court will follow.


Dated:  October 1, 2020

s/ *Robert J. Colville*
Robert J. Colville
United States District Judge

cc: All counsel of record via CM-ECF